IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01960-RBJ

GEORGE WALKER,

    Plaintiff,

v.

VINCE SUAREZ, Walsenburg Police Captain, and
KEVIN STONER, Deputy District Attorney for Colorado's Third Judicial District,
in their individual capacities,

    Defendants.

**ORDER**

This matter is before the Court on defendant Vince Suarez's and defendant Kevin Stoner's Motions to Dismiss, ECF Nos. 10 and 17. For the reasons discussed below, both motions are granted.

## I.    FACTS

The plaintiff, George Walker, brings this suit pursuant to 42 U.S.C. § 1983, claiming that the defendants violated his Fourth Amendment right to be free from unreasonable search and seizure and his First Amendment right to freedom of speech. ECF No. 5 ¶¶ 25-30. One of the defendants, Vince Suarez, is the Captain of the City of Walsenburg Police Department. *Id*. at ¶ 7. The other defendant, Kevin Stoner, is a Deputy District Attorney for Colorado's Third Judicial District. *Id*. at ¶ 8. Mr. Walker's claims arise out of his arrest and detention for

1

statements that he made about Michael Brown, a Certified Peace Officer for Colorado's Division of Wildlife. *Id*. at ¶ 10.

Joe Kancilja is the owner of a pawn shop in Walsenburg, CO. *Id*. at ¶ 12. According to Mr. Kancilja, near the end of March 2015, Mr. Walker came to Mr. Kancilja's pawn shop and stated that he was angry with the Division of Wildlife's helicopter for scaring away elk that Mr. Walker was trying to hunt. *Id*. at ¶ 12; Ex. B to Am. Compl; Ex. C to Am. Compl. Mr. Walker also stated "that he was going to shoot the [helicopter] down and kill everyone inside." *Id*. at ¶ 12; Ex. B to Am. Compl. Mr. Brown was in this helicopter checking the area for illegal hunting activity. *Id*. at ¶ 12.

On April 10, 2015 Mr. Walker returned to Mr. Kancilja's pawn shop and was angry that the helicopter had chased away the elk again. *Id*. at ¶ 12; Ex. B to Am. Compl. Mr. Walker stated that "he was going to shoot Mike Brown for chasing elk once again." *Id*. at ¶ 12; Ex. B to Am. Compl. Mr. Kancilja felt that Mr. Walker's statements "made it sound like [Mr. Walker] was laying for Mike Brown on the road." *Id*. at ¶ 12. Mr. Kancilja urged told Mr. Walker "to let it go," which angered Mr. Walker. *Id*. at ¶ 12. George Hundrun was also in the pawn shop at this time and heard Mr. Walker's statements concerning Mr. Brown. *Id*. at ¶ 12. Mr. Hundrun further reported that Mr. Walker bought a rifle scope while he was at the pawn shop. *Id*. at ¶ 12.

On April 14, 2015 Mr. Kancilja called Mr. Brown and told him about what Mr. Walker had said. Ex. B to Am. Compl. On April 15, 2015 Mr. Brown obtained written statements from Mr. Kancilja and Mr. Hundrun containing accounts of the declarations Mr. Walker made about shooting Mr. Brown and the helicopter. *Id*. at ¶ 13; Ex. B to Am. Compl.; Ex. C to Am. Compl. Mr. Brown then took the written statements to Mr. Suarez. *Id*. at ¶ 13. On April 16, 2015, Mr.

2

Suarez applied for a warrant to arrest Mr. Walker for felony menacing in violation of C.R.S. § 18-3-201(1)(B). *Id*. at ¶ 14; Ex. D to Am. Compl. Mr. Stoner reviewed and initialed the application for the warrant, and Mr. Suarez filed it with the Huerfano County District Court. *Id*. at ¶ 16. Honorable Judge Gary Stork issued the arrest warrant, and Mr. Suarez and other Walsenburg Police officers arrested Mr. Walker. *Id*. at ¶ 17-18.

Upon Mr. Walker's arrest, Judge Stork issued a $5,000 cash-only bond and scheduled Mr. Walker's first appearance for, and ordered the People to file charges by, May 11, 2015. *Id*. at ¶ 19. However, on May 8, 2015 Mr. Stoner filed with the court a motion for *Nolle Prosequi* requesting that the charges against Mr. Walker be vacated due to the lack of evidence necessary to prove the case against Mr. Walker beyond a reasonable doubt. Id. at ¶ 20. On May 11, 2015 Judge Stork granted the *Nolle* motion. Mr. Walker was unable to post the $5,000 bond and remained in the Huerfano County Jail from April 16, 2015, the day he was arrested, until the court granted the *Nolle* motion on May 11, 2015. *Id*. at ¶ 22.

On July 30, 2015 Mr. Walker filed his Complaint against Mr. Suarez and Mr. Stoner in the Huerfano County Combined Courts. ECF No. 4. On September 9, 2015, the case was removed to federal court pursuant to 28 U.S.C § 1446. ECF No. 1. While the case was still before the Huerfano court, Mr. Walker filed an Amended Complaint alleging violations of 42 U.S.C. § 1983. ECF No. 5 ¶ 30. Specifically, Mr. Walker alleged that Mr. Suarez's and Mr. Stoner's actions in connection to his April 16, 2015 arrest and subsequent detention violated his Fourth Amendment right to be free from unreasonable seizure because neither Mr. Suarez nor Mr. Stoner had probable cause to issue an arrest warrant and arrest Mr. Walker. ECF Nos. 19, 21. Mr. Walker also alleged that Mr. Suarez and Mr. Stoner violated his First Amendment right

3

to freedom of speech. *Id*. at ¶ 24-30. Both Mr. Suarez and Mr. Stoner subsequently filed Motions to Dismiss, arguing that Mr. Walker's claims should be dismissed on the following grounds: (1) both defendants are entitled to qualified immunity;[1] (2) Mr. Walker's first claim of relief for violations of his Fourth Amendment right fails to state a claim upon which relief may be granted; and (3) Mr. Walker's second claim of relief for violations of his First Amendment rights also fails to state a claim upon which relief may be granted.

## II.     STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal,* 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly,* 550 U.S. at 556; *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

---

[1] Because Mr. Stoner is entitled to qualified immunity, this Court need not address Mr. Stoner's contention that he is entitled to prosecutorial immunity.

### III.     ANALYSIS

**A. Qualified Immunity.**

Mr. Suarez and Mr. Stoner argue that they are entitled to qualified immunity. ECF No. 10, 11. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (internal quotations omitted). All public officials are presumed to have qualified immunity from suits for money damages, "except those who are 'plainly incompetent or those who knowingly violate the law.'" *See Shimomura v. Carlson*, No. 14-1418, 2015 WL 9466899, at *3 (10th Cir. 2015); *see also Lewis*, 604 F.3d at 1225 (discussing how qualified immunity is "'the norm' for public officials"). However, an "assertion of qualified immunity" may be overcome by a showing that (1) the public official "violated a federal statute or the U.S. Constitution and (2) the underlying rights were 'clearly established at the time of their alleged violation.'" *Shimomura,* 2015 WL 9466899 at *3. Considering this, "[i]n resolving a motion to dismiss based on qualified immunity, a court must consider 'whether the facts that a plaintiff has alleged [ ] make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Consequently, if, construing the allegations in the Amended Complaint in the light most favorable to Mr. Walker, Mr. Suarez and Mr. Stoner violated Mr. Walker's constitutional rights, and those rights were clearly established when Mr. Walker was arrested and detained, then Mr. Suarez and Mr. Stoner will not be entitled to qualified immunity.

### B. First Claim of Relief Against Captain Suarez and DDA Stoner for Violation of 42 U.S.C. § 1983 and Mr. Walker's Fourth Amendment Right to be Free From Unreasonable Seizure.

In determining whether the facts in the Amended Complaint indicate that Mr. Suarez and Mr. Stoner violated Mr. Walker's Fourth Amendment rights, this court must determine: (1) whether Mr. Suarez and Mr. Stoner "'possessed probable cause to arrest'" Mr. Walker for felony menacing; and (2) "'whether extant clearly established law'" at the time of Mr. Walker's arrest and detention "would have placed a similarly situated police officer on notice that no probable cause existed." *See Shimomura*, 2015 WL 9466899 *3 (internal quotations omitted).

In *Shimomura* the Tenth Circuit addressed qualified immunity and probable cause in the context of the Fourth Amendment. The court found that a police officer had arguable probable cause to arrest the plaintiff for assault after the plaintiff allegedly pushed his roller bag into a TSA agent. *Id.* at *3. The Tenth Circuit held that public officials may "enjoy qualified immunity if probable cause [was] at least arguable." *Id.* (internal quotations omitted). "Under this standard, probable cause would exist if [the police officer] had reasonably trustworthy information that would lead a prudent person to believe that [the plaintiff] had committed an offense." *Id.*; *see also Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("Arguable probable cause is another way of saying the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists.") Considering this, even though the evidence did not definitively prove that the plaintiff pushed his roller bag in to a TSA agent, the police officer could have reasonably believed that the bag hit the agent, given that the plaintiff moved his bag in the agent's direction and then walked quickly away, and the agent moved suddenly after the bag was pushed in her direction. *Id.* at *3-4. Consequently, the police

6

officer had arguable probable cause to arrest the plaintiff for assault, and was entitled to qualified immunity from the plaintiff's Fourth Amendment claim. *Id*. at *4-5.

As the Tenth Circuit stated in *Shimomura*, in determining whether probable cause existed, this Court must identify and consider the alleged offense for which the plaintiff was arrested. *Id*. at *3. C.R.S. § 18-3-206(1)(b) provides that

> (1) A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed . . .
>
> > (b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

The statute does not require the prosecution to prove "actual subjective fear on the part of the victim." *People v. Saltray*, 969 P.2d 729, 731-32 (Colo. App. 1998). Rather, the statute provides for conviction even if the defendant "attempt[ed] to place another person in fear of imminent serious bodily injury by the use of a deadly weapon," but did not have "a conscious objective to cause such fear" in the victim. *People v. Crump,* 769 P.2d 496, 499 (Colo.1989). Consequently, the Colorado Court of Appeals has held that "it [is] unnecessary to prove that the victim actually knew a deadly weapon was involved," and the victim need not "actually [ ] hear or be cognizant of any threat from the defendant." *People v. Zieg,* 841 P.2d 342, 344 (Colo.App.1992); *see also People v. Saltray*, 969 P.2d 729, 732 (Colo. App. 1998) ("[I]f there is evidence from which the jury could reasonably find that defendant knew his actions, if discovered, would place the victim in fear . . . then the intent element of the offense may be established.")).

Accordingly, the facts and allegations in the Amended Complaint establish that Mr. Suarez and Mr. Stoner had at least arguable probable cause to arrest Mr. Walker for felony menacing.  Contrary to Mr. Walker's assertions, Mr. Brown did not need to hear Mr. Walker's statements, nor must Mr. Walker have intended his statements to have placed Mr. Brown in fear. *See* ECF No. 19, 21.  Mr. Kancilja's informing Mr. Brown about Mr. Walker's threats, and the urgency with which Mr. Brown reported these threats to police, indicate that Mr. Walker's statements were not only "attempts to place [Mr. Brown] in fear of imminent serious bodily injury," but actually succeeded in doing so.  *See* C.R.S. § 18-3-206(1).  Further, Mr. Walker's statements that he was a hunter and wanted to shoot down the helicopter, and his purchase of a rifle scope, "represent[ed] verbally [and] otherwise that he [was] armed with a deadly weapon." *See* C.R.S. § 18-3-206(1)(b).  Lastly, the arrest warrant was approved by a judge, which is a "clear[ ] indication that [arresting] officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012).

Therefore, the facts alleged in the Amended Complaint indicate that Mr. Suarez and Mr. Stoner had arguable probable cause to arrest Mr. Walker for felony menacing.  Consequently, neither Mr. Suarez nor Mr. Stoner violated Mr. Walker's Fourth Amendment right to be free from unreasonable seizure.  Mr. Suarez and Mr. Stoner are entitled to qualified immunity from Mr. Walker's Fourth Amendment claim.

### C. Second Claim for Relief Against Captain Suarez and DDA Stoner for Violation of 42 U.S.C. § 1983 and Mr. Walker's First Amendment Right to Freedom of speech.

In determining whether the facts in the Amended Complaint indicate that Mr. Stoner and Mr. Suarez violated Mr. Walker's clearly established First Amendment right to freedom of speech, this Court first must consider whether Mr. Walker's statements constituted "true threats."

*See Nielander v. Board of Cnty. Com'rs*, 582 F.3d 1155, 1166-69 (10th Cir. 2009). The First Amendment does not protect speech that constitutes "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). While political hyperbole is protected speech, political speech may nevertheless contain true threats. *Compare Nielander*, 582 F.3d at 1168 (holding that the plaintiff in a First Amendment retaliation action had made a true threat, not just political hyperbole, given that the plaintiff said he "would bring a gun" to a Board of County Commissioners meeting and "was extremely agitated") *with Watts v. U.S.*, 394 U.S. 705, 708 (1969) (holding that the defendant had not made a true threat when, during a political rally, he suggested he would shoot Lindon B. Johnson if he were forced to fight in a war, given that the threat was "political hyperbole" which tends to be "vituperative" and "inexact"). True threats "constitute speech beyond the pale of protected vehement, caustic . . . unpleasantly sharp attacks on government and public officials." *Nielander*, 582 F.3d at 1168 (internal quotations omitted). A true threat must be a "serious threat," as opposed to statements consisting of "mere political argument, idle talk or jest." *U.S. v. Viefhaus*, 168 F.3d 392, 395 (10th Cir. 1999) (internal quotations omitted). In *Virginia v. Black*, the Supreme Court defined true threats as

> . . . statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person . . with the intent of placing the victim in fear of bodily harm or death.

*U.S. v. Heineman*, 767 F.3d 970, 976 (10th Cir. 2014) (quoting *Virginia v. Black*, 538 U.S. 343, 359-60 (2003)). The Tenth Circuit has interpreted *Black*'s definition as requiring that the speaker subjectively intend for "the recipient of the threat to feel threatened." *Id*. at 978 (holding

that the *Black* decision requires "more than a purpose to communicate just the threatening words," and instead "require[es] that the speaker want the recipient to believe that the speaker intends to act violently").[2]

Here, it is clear that Mr. Walker intended his statements to be a true threat. While Mr. Walker may not have intended to actually shoot down the helicopter, it is clear that he intended for his statements and actions to instill fear of bodily injury in Mr. Brown. Mr. Walker was angry at Mr. Brown, refused to "let it go," and had an obvious desire for the helicopter to stop chasing elk away. Further, Mr. Kancilja opined that Mr. Walker's statements "made it sound like" he was lying in wait for Mr. Brown. Mr. Walker was also a hunter with access to guns, and bought a rifle scope at the pawn shop the same day that he threatened to shoot Mr. Brown. Considering that Mr. Walker made these threats using obscene language aimed at a specific individual on two separate occasions suggests that his statements went beyond "mere political argument, idle talk or jest." *See U.S. v. Viefhaus*, 168 F.3d at 395. Therefore, Mr. Walker's statements constituted true threats and were not protected by the First Amendment.

---

[2] This Court finds that the Tenth Circuit's decision in *U.S. v. Twitty* and the Supreme Court's decision in *Elonis v. U.S.* do not render *Heineman*'s holding obsolete. In *U.S. v. Twitty*, the Tenth Circuit declined to follow *Heineman* and instead defined a true threat as a statement "that a reasonable person under the circumstances would understand as a declaration of intention . . .to inflict . . . pain on another." *U.S. v. Twitty*, 591 Fed. Appx. 676, 681, 682 n. 4 (10th Cir. 2015) (internal quotations omitted). However, the Supreme Court vacated *Twitty*'s judgment and remanded the case to the Tenth Circuit for further consideration in light of the Supreme Court's recent decision in *Elonis v. U.S. Twitty v. U.S.*, 136 U.S. 90 (2015). In *Elonis*, the Supreme Court held that "the mental state requirement in [18 U.S.C.§ 875(c)]," which criminalizes transmitting a "communication containing any threat . . . to injure the person of another," "is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis v. U.S.*, 135 S.Ct. 2001, 2004, 2012 (2015) (internal quotations omitted). Consequently, the district court erred when it instructed the jury that "the Government need prove only that a reasonable person would regard [the defendant's] communications as threats." *Id*. at 2012. However, the Supreme Court declined to consider any First Amendment issues. *Id*. at 2012. Considering this, to the extent that *Elonis* is even binding upon the situation presented in this case, *Heineman*'s requirement that the speaker must intend for the recipient of a threat to feel threatened is consistent with the Supreme Court's holding.

Consequently, neither Mr. Suarez nor Mr. Stoner violated Mr. Walker's First Amendment right to freedom of speech. Mr. Suarez and Mr. Stoner are entitled to qualified immunity from Mr. Walker's First Amendment claim.

## IV.   ORDER

For the reasons discussed above, Mr. Suarez and Mr. Stoner are entitled to qualified immunity from Mr. Walker's Fourth Amendment and First Amendment claims. Consequently, defendant Suarez's and defendant Stoner's Motions to Dismiss, ECF Nos. 10 and 17, are GRANTED, and this civil action and all remaining claims therein are DISMISSED WITH PREJUDICE. As prevailing parties, Mr. Suarez and Mr. Stoner are entitled to an award of costs pursuant to F.R.C.P. 54(d)(1) and D.C.COLO.LCivR 54.1. However, this Court does not find it appropriate to award attorney's fees pursuant to 42 U.S.C. § 1988. Further, C.R.S. § 13-17-101, 102 and C.R.C.P. 12(b) are state laws of a procedural nature that are inapplicable in federal court, and an award of attorney's fees under those provisions is also inappropriate.

DATED this 26th day of January, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge